UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
UNITED STATES OF AMERICA
　　　　-v-

NICK VOURAKIS
----------------------------------------x

JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT

CASE NUMBER: CR-02-1522(ARR)
JILL SHELLOW-LAVINE, ESQ
2537 POST ROAD
SOUTHPORT, CT 06890
Defendant's Attorney & Address

THE DEFENDANT:
XXX　pleaded guilty to count three of the indictment.
___　was found guilty on counts　　　　　　　　　after a plea of not guilty.
　　　Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve the following offenses:

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 26 USC 7201 | INCOME TAX EVASION. | THREE (3) |

The defendant is sentenced as provided in pages 2 through　　of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

___　The defendant has been found not guilty on count(s)　　　and is discharged as to such count(s).
XXX　Remaining counts are dismissed on the motion of the United States.
XXX　It is ordered that the defendant shall pay to the United States a special assessment of $100.00 which shall be due XXX immediately ___ as follows:

It is further ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of residence or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec #

Defendant's Date of Birth 9/25/60

Defendant's Mailing Address:

298 LACONIA AVENUE

STATEN ISLAND, NEW YORK 10305

Defendant's Residence Address:

( SAME AS ABOVE )

FEBRUARY 24, 2006
Date of Imposition of Sentence

ALLYNE R. ROSS, U.S.D.J.

FEBRUARY 24, 2006
Date

A TRUE COPY ATTEST
Date:_____
ROBERT C. HEINEMANN
CLERK OF COURT

By:_____

DEPUTY CLERK

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of six (6) months.

__xxx__  The Court makes the following recommendations to the Bureau of Prisons:
THAT THE DEFT BE HOUSED AT THE FACILITY IN OTISVILLE.

___  The defendant is remanded to the custody of the United States Marshal.
___  The defendant shall surrender to the United States Marshal for this district,

    ___ at _____ a.m./p.m. on _____.
    ___ as notified by the Marshal.

__xxx__  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

    __xxx__ before 12:00 noon on __4/4/06__.
    ___ as notified by the United States Marshal.
    ___ as notified by the Probation Office.

## RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____
_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this Judgment.

United States Marshal

By_____

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of three (3) years.

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

1) DEFT SHALL MAKE FULL RESTITUTION IN THE AMOUNT OF $51,135.00 TO BE PAYABLE AT A RATE OF 15% OF THE DEFT'S NET INCOME. PAYMENT SHALL COMMENCE THREE MONTHS AFTER DEFT IS RELEASED FROM CUSTODY. PAYMENTS SHALL BE MADE TO THE CLERK OF THE COURT, 225 CADMAN PLAZA EAST, BROOKLYN, NEW YORK 11201. THE CLERK OF THE COURT SHOULD FORWARD PAYMENTS TO THE INTERNAL REVENUE SERVICE.
2) DEFT SHALL MAKE FULL FINANCIAL DISCLOSURE TO THE PROBATION DEPARTMENT.
3) DEFT SHALL NOT POSSESS ANY FIREARMS.

___  The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;
2) the defendant shall not leave the judicial district without the permission of the court or probation officer;
3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) the defendant shall support his or her dependents and meet other family responsibilities;
6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

Defendant: NICK VOURAKIS
Case Number: CR-02-1522(ARR)

Judgment - Page    of

## FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of $ 100.00    , consisting of a fine of $   N/A    and a special assessment of $ 100.00    .

___ These amounts are the totals of the fines and assessments imposed on individual counts, as follows:

This sum shall be paid ___ immediately
                       ___ as follows:

**XXX** The Court has determined that the defendant does not have the ability to pay any fines, cost of confinement or supervision.

___ The interest requirement is waived.
___ The interest requirement is modified as follows:

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,      :
4
                    Plaintiff,      :    CR-02-1522
5                                   :
           -against-                :    United States Courthouse
6                                   :
                                    :    Brooklyn, New York
7
     NICK VOURAKIS,                 :
8
                    Defendant       :
9                                   :    February 24, 2006
                                    :    11:00 a.m.
10   - - - - - - - - - - - - - X

11              TRANSCRIPT OF SENTENCING
           BEFORE THE HONORABLE ALLYNE ROSS
12            UNITED STATES DISTRICT JUDGE

13   APPEARANCES:

14   For the Plaintiff:    ROSLYNN R. MAUSKOPF, ESQ.
                           United States Attorney
15                         BY: CAMERON ELLIOT, ESQ.
                           Assistant United States Attorney
16
     For the Defendant:    JILL SHELLOW-LAVINE, ESQ.
17

18   Probation:            GREG GIGANTIELLO

19

20   Court Reporter:       FREDERICK R. GUERINO, C.S.R.
                           225 Cadman Plaza East
21                         Brooklyn, New York
                           718-330-7687
22

23

24   Proceedings recorded by mechanical stenography, transcript
     produced by CAT.
25

1    THE COURT: For purposes of Mr. Vourakis'
2 sentencing, the major dispute between the parties has always
3 been the quantification of the amount of total tax loss
4 attributable to Mr. Vourakis' scheme to underreport his
5 taxable income and inflate his claimed deductions for the tax
6 years 1993 to 1996.
7    In their most recent correspondence, the government
8 and defendant have communicated their agreed suggestion that
9 I not conduct a <u>Fatico</u> hearing on this issue, but rather
10 permit counsel to advocate for their respective positions
11 orally at sentence, as supported by their written submissions
12 and the written record that had been submitted. At counsel's
13 urging, I have adopted this procedure.
14    Under the 1995 guidelines, which all parties
15 acknowledge are applicable to this case, where the offense
16 involved filing a tax return in which gross income was
17 underreported or deductions were improperly claimed, the tax
18 loss shall be treated as 28 percent of the unreported gross
19 income and improperly claimed deductions "unless a more
20 accurate determination of the tax loss can be made." That's
21 guideline 2T1.1.
22    The application notes, specifically note 1 to the
23 guideline, indicate that the presumptions are to be used
24 "unless the government or defense provides sufficient
25 information for a more accurate assessment of the tax loss."

1    It is undisputed that if the tax losses incurred in
2 the 1995 and 1996 tax years are conduct relevant to the
3 losses incurred in 1995, then the presumed tax loss under the
4 guideline exceeds $200,000 -- I'm sorry that must be 1994.
5    However, defendant argues that any tax loss
6 attributable to his 1995 and 1996 tax returns was not conduct
7 relevant to the conduct underlying the 1994 tax loss because
8 the tax returns filed in the latter years were prepared with
9 the assistance of counsel, Katheryn Keneally and an
10 accountant Ralph Kroner.  At a minimum, it appears defense
11 counsel is arguing that these facts relating to defendant's
12 1995 and 1996 returns would warrant a downward departure from
13 the guidelines because in defining relevant conduct for the
14 purposes of the tax evasion guidelines, Congress "did not
15 consider that the resulting tax loss would necessarily
16 include such counselled liabilities."
17    I do not believe the guideline is susceptible to
18 such an interpretation, nor do I believe a guideline
19 departure for the stated reason would be warranted.
20    Application note 2 to the guideline identifies as
21 relevant in a tax case "all conduct violating the tax laws,
22 unless the evidence demonstrates that the conduct is clearly
23 unrelated."
24    The note cites as illustrative examples:
25    Where "there's a continuing pattern of violation of

1  the tax laws by the defendant;"

2  Where "defendant uses a consistent method to evade

3  or camouflage income;"

4  Where violations "involve a related series of

5  transactions;" or

6  Where "a violation in each instance involves a

7  failure to report or an understatement of a source of

8  income."

9  Here, the defendant's tax scheme throughout the

10 period 1993 through 1996 involved underreporting of gross

11 income from his business, Cosmos Construction, by cashing, at

12 Acme Check Cashing, checks representing business revenues,

13 and falsely inflating business expenses.

14 That defendant was represented by counsel when his

15 1995 and 1996 returns were filed, does not render the conduct

16 constituting his tax violation "clearly unrelated" to his

17 conduct in 1994.

18 If the tax loss is calculated pursuant to the

19 "presumptive loss" guideline, it exceeds $200,000 even

20 without counting 1993 unreported income and all of

21 defendant's improperly claimed deductions.

22 As indicated under the guideline, this presumptive

23 tax loss is to be used, unless the government or defense

24 provides sufficient information for a more accurate

25 assessment of the tax loss.

1     Here, both the government and the defendant do
2 provide an independent assessment of the tax loss - the
3 government relying on independent calculation of tax loss by
4 the Internal Revenue Service, concluding, again, that the
5 loss exceeds $200,000, and the defendant relying on the
6 computations of Mr. Kroner, calculating a total tax loss of
7 $66,970.
8     As to these independent calculations, however, the
9 parties hotly dispute the reliability of each other's sources
10 and methodologies, the existence of any evidentiary basis for
11 the figures relied upon and, in some cases, the credibility
12 of witnesses who are the sources of underlying evidentiary
13 assumptions.  Absent an evidentiary hearing, which both
14 parties have chosen to forego, it is impossible to determine
15 that either method is a more accurate assessment of the loss
16 than the presumed tax loss of 28 percent.
17     Accordingly, in determining the advisory guideline,
18 I conclude that the offense level (based on tax loss) is 16
19 pursuant to guideline 2T4.1(k), as the tax loss exceeds
20 $200,000.
21     The parties remaining dispute regarding the
22 calculation of the advisory guideline concerns the
23 applicability of the two-level sophisticated means
24 enhancement of guideline 2T 1.1(b)(2).  The government
25 contends that the enhancement applies because defendant used

1  a Greek bank account, the existence of which he denied to the
2  Internal Revenue Service, which held approximately $25,000.
3  The government is correct that application note 4 of the
4  guideline cites use of offshore bank accounts as an example
5  of conduct rendering the enhancement applicable.
6      In the circumstances of this case, I find the
7  question a close one. However, because, as defense counsel
8  points out, the $25,000 the account held represented but a
9  small fraction of the proceeds of the defendant's unreported
10 gross income, which exceeded $900,000, and no evidence before
11 me suggests that the account ever held more than $25,000,
12 amounting to 1/36th of the total checks cashed or 1/10th of
13 the total tax loss, it is doubtful that the enhancement
14 applies.
15     In any event, it is unnecessary to resolve this
16 guideline issue because, in the circumstances of this case, a
17 non-guidelines sentence of Mr. Vourakis, which I have
18 concluded would be appropriate, would be the same regardless
19 which party prevailed on this dispute concerning the advisory
20 guideline.
21     Turning to the statutory factors. I have, of
22 course, considered the advisory guidelines.
23     Mr. Vourakis' guideline is either a level 17,
24 carrying a range of 18 to 24 months imprisonment, or a level
25 13, carrying a range of 12 to 18 months imprisonment.

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER

As to the nature and circumstances of the offense, I have, as already discussed, concluded that the defendant committed a continuing offense over a four-year period and was responsible for the loss of in excess of $200,000 in tax revenues.

Addressing the nature and characteristics of the defendant, Mr. Vourakis is a 44-year-old Greek immigrant with a wife and three-year-old daughter. He has no prior convictions and no prior brushes with the law.

His wife has never been employed, is apparently far from fluent in the English language, and according to both of them, as well as family members, she relies heavily on defendant in dealing with the world outside of the Greek community. Although the Probation Department noted that a family member assisted defendant's wife by translating for her during the Probation Department interview, defense counsel contests, apparently without serious dispute, that family support is not available on a regular basis. There is no doubt in my mind that defendant's incarceration will present severe difficulties for his family.

Defendant has a history of steady employment in the construction industry, primarily as a salaried employee. A letter from a former employer attests that the defendant is hard working and talented, and also appears to endorse defendant's honesty. It was during the four-year period the

1  defendant ran his own construction business that he became
2  involved in the instant offense.
3        Many letters from family and friends attest that the
4  defendant not only is devoted to his family, but also
5  contributes to his community, volunteering his time and
6  skills and lending support to those in need.
7        Under the circumstances, I believe a sentence of six
8  months incarceration would be ample, but no more severe than
9  necessary to make sure the goals of sentencing are met.
10       It represents a term of incarceration that is
11 hardly insignificant, and, indeed, is only moderately below a
12 guideline sentence.  Thus, it accommodates both the severity
13 of the crime the defendant committed, mitigated somewhat by
14 the defendant's personal circumstances.
15       Based on the evidence before me regarding the
16 circumstances of defendant's crime and of his life, more
17 generally, I am persuaded that the defendant has expressed
18 genuine remorse for his conduct, will not recidivate, and
19 that the sentence selected provides just punishment for the
20 offense and the safety of the public, and promotes respect
21 for the law.
22       I, therefore, sentence Mr. Vourakis to the custody
23 of the Attorney General for a period of six months, to be
24 followed by a three-year period of supervised release, with
25 the following special conditions:  that he make restitution

1  to the Internal Revenue Service in the amount of $51,135
2  payable at the rate of 15 percent of the defendant's net
3  income, commencing within three months of his release from
4  custody; that he make full financial disclosure as required
5  by the Probation Department
6       The statute involves cost of prosecution, but I've
7  never been presented with evidence of cost of prosecution, so
8  I will not impose that.
9       Obviously, I prohibit possession of a firearm.
10      I make a finding that Mr. Vourakis is unable to pay
11 a fine, but I will impose the mandatory $100 special
12 assessment.
13      Mr. Elliot, I can't recall, are there any open
14 counts?
15      MR. ELLIOT: Yes, Your Honor. There is Count One
16 and Count Two, I believe, to be dismissed
17      THE COURT: Okay. The motion is granted.
18      Mr. Vourakis, there are circumstances in which a
19 defendant may appeal the sentence. I don't know that it will
20 apply in your case. You discuss that with your attorney. If
21 you choose to appeal, a notice of appeal must be filed within
22 ten days. If you couldn't afford a lawyer, a lawyer would be
23 appointed to represent you.
24      MS. SHELLOW-LAVINE: Your Honor, if we could request
25 in the Judgment and Commitment a self-surrender date of April

1 4th?

2 THE COURT: That might even be too early. I don't
3 know, is that too early?

4 THE COURT CLERK: That should be sufficient. It is
5 only six months.

6 THE COURT: That's fine, at 12:00.

7 What about a designation?

8 MS. SHELLOW-LAVINE: Otisville, please, your Honor.

9 THE COURT: All right.

10 MR. ELLIOT: Thank you, your Honor.

11 MS. SHELLOW-LAVINE: Thank you, your Honor.

12 (The sentence is concluded.)

13
14
15
16
17
18
19
20
21
22
23
24
25

FREDERICK R. GUERINO, C.S.R.        OFFICIAL COURT REPORTER